Filed 10/29/13  P. v. Suarez CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　v.<br><br>NEWTON SUAREZ,<br><br>　　　Defendant and Appellant. | B240911<br><br>(Los Angeles County<br>Super. Ct. No. PA068584) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Beverly Reid O'Connell, Judge.  Affirmed.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Newton Suarez appeals from the judgment convicting him of multiple crimes, including sentence enhancements. The sentence was imposed, in part, under Penal Code sections 667, subdivisions (b) to (i) and 1170.12, subdivisions (a) to (d), collectively, the "Three Strikes" law.[1] The appeal raises a single claim: the trial court abused its discretion under section 1385 by failing to strike one or both of the qualifying prior convictions alleged and proved under this law. We find no abuse of discretion, and affirm the judgment.

## FACTUAL AND PRODCEDURAL SUMMARY

Since the section 1385 issue is the only claim on appeal, our discussion of the factual and procedural record will be brief.

The charges in this case grew out of a violent physical confrontation between appellant and Rachel R., the woman with whom he was living. The charging pleading accused appellant of attempted murder (§ 187/664; count 1), criminal threats (§ 422; count 2), obstructing a peace officer (§ 148, subd. (a)(1); count 4), corporal injury to a spouse (§ 273.5; count 5), dissuading a witness (§ 136.1, subd. (a)(1); count 6) and violating a protective order (§ 166, subd. (c)(1); count 7.) He also was charged with infliction of great bodily injury (§ 12022.7, subd. (c)) and use of a deadly weapon (§ 12022.2, subd. (b)(1)). Finally, he was charged with several enhancements as well as the Three Strikes law allegations, based on prior criminal activity. He was convicted by jury trial on all but the first two counts. He waived jury trial on the prior conviction allegations, and these were found true by the trial court. An aggregate sentence of 64 years to life was imposed for these crimes and enhancements. As we have noted, no issue is raised on appeal with respect to any of these results and punishments, other than application of the Three Strikes law, which we shall discuss.

The evidence showed that appellant was living with Rachel and her three children. He and Rachel were home on September 13, 2010, when an argument ensued after

---

[1] All further undesignated statutory references are to the Penal Code.

2

Rachel informed appellant that she was unhappy with their relationship, including their use of drugs, and that she was going to move to her mother's home. Appellant accused Rachel of cheating, which she denied. He proceeded to punch her with his closed fists, striking her 10 times. He declared that he was going to kill her. He also stabbed her in the head with a pair of scissors. Rachel was bleeding and asked for help, and for appellant to call 911. He replied, "Why should I help you, bitch?" She continued to plead for help, and appellant continued to refuse assistance, amplifying his insulting expression. Eventually, he obtained a towel for her head. She continued to ask him to call 911, and said she was afraid that she would die from the wound to her head. He told her it was not that bad. This went on for 10 to 15 minutes. Finally, Rachel promised to tell police that she had hurt herself and not blame him, and that she still loved him and would marry him. Appellant called 911, and handed the phone to Rachel, who told the operator she hit her head on glass, she was bleeding, and appellant was helping her.

By the time an ambulance arrived, Rachel was going in and out of consciousness, had a black eye and swollen face, and bruises over her body. She lied to the attendant, saying she had hurt herself on the bed frame. Rachel also told that story to her mother, who had arrived at the scene. Her mother did not believe her.

Rachel met with a police detective after her release from the hospital. She then said that appellant had punched her and stabbed her with scissors. She also informed police where appellant might be staying and described the car he was driving.

Police proceeded to the location Rachel had provided and found the car. Appellant was seen entering the car and driving off. Police followed. Appellant made eye contact with them. He then accelerated his car. There was a pursuit. Appellant abandoned the car and tried to run away. He was chased by police who repeatedly ordered him to stop. Finally, he stopped running and put his hands in the air, but resisted arrest. It took six officers to overcome his resistance. Given an admonition about his right to remain silent, he acknowledged that he understood his rights. Asked why he had fled, appellant said he was afraid, "due to the fact that he knew what took place and what he did with Rachel."

3

This was not the first violent encounter between Rachel and appellant. Some four months earlier appellant tried to strangle her after an argument. She tried to escape by running out the door, but each time she tried, appellant grabbed her and pulled her back. But Rachel refused to cooperate with police who arrived at the scene. On another occasion, appellant had held a knife to her throat, said that he would kill her if she left him, and "head butted" her, leaving her with a crooked and swollen nose as well as scratches and ruptured blood vessels on her neck. On still another occasion, appellant pushed Rachel out of a moving car.

Appellant had been involved in a previous relationship with Diana O. He would become jealous for no apparent reason. On one occasion he grabbed Diana, shook her, and accused her of cheating. On another he pulled her arm and asked for money after she said she had none to give him. On yet another occasion, he dragged her from her mother's home, and on still another he pushed her onto a car dashboard, leaving a permanent scar on her nose.

An incident with Diana was the basis for one of the prior serious/violent felony convictions (kidnapping). On that occasion, in September 2001, appellant dragged Diana from her friend's apartment and pushed her into a car, started the car with a metal instrument and, when Diana refused to talk to him, told her he was taking her to Tujunga Canyon, where he was going to strangle her, declaring, "if you're not for me, you're not going to be for nobody else." While speeding away he hit another car, then crashed into a wall. Police arrived, and appellant fled the scene.

The other "strike" prior (assault with a deadly weapon) occurred when appellant was 17 years old. He got into an argument, then a fight with two men. One of them struck at appellant with a baseball bat. Appellant grabbed the bat and hit one of the men, saying that he was going to kill them. He served time in prison for the offense.

## DISCUSSION

The Three Strikes law applies where the defendant has been convicted of one or more prior serious or violent felonies, as defined, and (as applied to appellant) is

4

convicted of a later felony.  If there is only one serious or violent felony prior, the sentence for the new felony is doubled.  If there are two, the punishment for the third felony is an indeterminate life term, with a minimum in most cases (including this one) of 25 years.  (§§ 667, subd. (e)(2)(A), 1170.12, subd. (c)(2)(A).)  The sentencing judge has discretion under section 1385 to strike a prior conviction in "furtherance of justice." (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 520.)

While, technically, a defendant is not authorized to bring a "motion" to strike a prior conviction alleged under the Three Strikes law, the defendant may ask that the court exercise its discretion to strike the prior—essentially the same thing.  (See *People v. Carmony* (2004) 33 Cal.4th 367, 375.)  In this case, appellant's counsel moved the court to strike one or both of appellant's qualifying prior convictions.  The trial court's ruling on the request is subject to appellate review under the deferential abuse of discretion standard.  In ruling on the request to dismiss a qualifying prior conviction, the court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one and/or more serious or violent felonies." (*People v. Williams* (1998) 17Cal.4th 148, 161 (*Williams*).)

We are confident that the trial court exercised that review in this case.  Appellant argues the record of the court's ruling does not reflect the "reasoned consideration of all relevant factors" that the law requires, citing *People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 981.  In that case, the court said, acknowledging the "extremely deferential and restrained standard by which appellate courts are bound in these matters, we find the . . . decision [failure to reduce a wobbler to a misdemeanor for purposes of Three Strikes law sentencing] tolerable given the court's broad latitude."  It went on to caution that the circumstances of the case before it are not intended to establish a "'floor'" below which reviewing courts cannot find an abuse of discretion under section 17, subdivision (b) (applying to wobblers).  "On the contrary, the lesson we reiterate

today is that any exercise of that authority must be an intensely fact-bound inquiry taking all relevant factors, including the defendant's criminal past and public safety, into due consideration; and the record must so reflect." (*Id.* at pp. 981–982.)

That was the kind of review the trial court accorded in this case.

The trial court acknowledged that the kidnapping prior conviction resulted from a plea agreement in which appellant received a low term sentence, and that this conviction was 12 years after the first qualifying prior conviction. The court began the sentencing colloquy with its principal concern: "Here is my concern, and maybe you can address your comments to this. [¶] . . . [Appellant] has had a pattern of criminal activity, some of it less significant than the other. [¶] The 14601's are non-violent, but he's committed crimes while on probation. [¶] The crime, while not convicted of attempted murder, was with scissors. The jury did believe the prosecution's evidence. [Appellant] did testify to an alternative scenario, which the jury rejected. [¶] So I am troubled by [appellant's] consistent recidivism, which puts him squarely within the Three Strikes law. [¶] And while, you know, this is a significant sentence, committing crimes while on probation or parole consistently appears to fall within the heart of the Three Strikes rule. [¶] So let's start from there."

Defense counsel then addressed the first qualifying felony, assault with a deadly weapon. He pointed out that appellant was 17 years old at the time, and that the circumstances of the crime showed that he was acting in self-defense, someone else brought the weapon, a bat, and ended up on the short end of the stick himself, and "again, he was 17." The second qualifying crime occurred 12 years later, and the 911 tape which the jury did not hear, did not mention that appellant had dragged Diana out of the car by her hair, which indicates that did not happen. But, "unfortunately, he pled no contest to that 207." And in the present case, the assertion that Rachel was injured was not substantiated and when Rachel said there was blood, the first thing appellant did was to get a towel, an unlikely response if he had caused the bleeding. And while he later fled, he did so because he was terrified. "[B]ased on the facts—and there is a problem with each one of these prior cases—that would take him outside of the realm of the Three

6

Strikes law and afford him an opportunity to be sentenced without the three strikes; strike a strike. There is ample opportunity to sentence him a lot of other ways without striking him out."

The prosecutor presented rebuttal argument, pointing out, among other things, that in the kidnapping case, Diana was dragged from her apartment by her hair, taken to her car, where appellant kidnapped her to take her to the canyons and strangle her. And later, appellant fled, then resisted arrest. He also told Rachel not to cooperate with police and violated a court order that he not communicate with Rachel, telling her to come into court and lie. All of this, she argued, places appellant "squarely within the Three Strikes law."

There was a brief rebuttal. Appellant, invited to make a statement, asked for mercy and said he was sorry for what happened between himself and Rachel.

The trial court spoke next:

"The court finding no legal cause, this case if not one without—that I reach lightly. [¶] I listened to the evidence in this case. [¶] It is undisputed that the jury believed, Mr. Suarez, that you did not accidentally plunge the scissors into your domestic partner's head. They didn't believe it was an accident. And that's problematic for you, because you're still maintaining that it is an accident when you testified. [¶] I've looked at the prior convictions and whether or not you fall outside the spirit of the three strikes rule. [¶] You have the prior conviction in 1983 for a 242. And I can look at your juvenile convictions. The law permits me to do that. [¶] 1988 you have a prior conviction for resisting. [¶] 1989 you have a prior conviction for 11377. [¶] 1990 you have a prior conviction for the strike allegation, 245 (a)(1). [¶] 1996 you have a 14601, non violent. [¶] 1997 you have a 242. [¶] 1997 you have another 14601. [¶] 1997 you have attempted 11350. [¶] 1998 you have a hype case, as your lawyer refers to it. [¶] 1999 you have a federal false statement. [¶] 2000 you have a 14602. [¶] 2001 you have a 14601. [¶] 2002 you pled to a kidnapping strike and you were returned to the department of corrections for a violation of parole and you had a petty theft. [¶] And then January 9, 2012 you had this conviction. [¶] You have what can only be characterized as a long and varied criminal history. And what *Williams* says—*People v. Williams* says, I have to

7

look at your individualized characteristics. It doesn't say you just look at the violent crime, it says recidivism. [¶] And the law has developed that it doesn't necessarily have to be—it doesn't have to be a violent crime, your current offense that subjects you to it, but I cannot say you fall outside of the Three Strikes rule. [¶] I have looked at the circumstances of this case. You have not accepted responsibility for this case. You maintain that this was an accident. You left the scene. [¶] I am not sure that Rachel was particularly vulnerable, but you certainly committed the crimes while on probation or parole. [¶] So I am sentencing you to a term of imprisonment as to count 5 of 25 years to life based on your prior convictions."

As Justice Mosk famously said in *Williams*, the issue is whether the appellant's record and the circumstances place him outside the "spirit" of the Three Strikes law. To the contrary, he appears to be exactly the sort of defendant to whom the law was intended to apply. The record reflects the trial court's consideration of all the circumstances and reflects no abuse of discretion.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

WILLHITE, J.                    SUZUKAWA, J.

8